The first case on our list is Pittsburgh Mailers v. PG Publishing. Mr. Pass, welcome back. You were here a couple of days ago. Yes, sir. Thank you. I may please the court. My name is Joseph J. Pass, and I represent the- We can't quite hear you. I know the logistics are challenging. Is that any better? That's better. Okay. I represent the Mailers Local 7, and the Pressman Local 9, 24 of 9. In this particular case, it's our appeal with regards to the attempt by these three unions to proceed to arbitration under a contract that had, by its term, expired. But yet, under the theory of Ludens, that was decided by this court, that the arbitration clause survived because there was no particularized renunciation of that particular provision. Why should we deviate from the previous NPO in this case? Because I think the court- You're talking about the panel that decided the first case. Right, right. It's not this case, but the analogous, the analogous case. Simply because I do believe they made an error. I don't think that was a particularized renunciation of the arbitration provision. And I can't help but- But it's the same language, right? The same language in the language. It's the same language. It absolutely is. So that's a non-presidential decision. And if you read Judge Ranjan's footnote, he too agreed, obviously, he was compelled to follow the ruling, but he also thought that that was not a particularized renunciation of the arbitration provision. Well, let me ask you, was he compelled to follow the ruling? I mean, we say non-presidential for a purpose, but yet if district court judges and attorneys many times in citing these cases refer to them as presidential, I mean, he wasn't really obligated to follow that ruling. He could have followed Ludens. He could have distinguished Ludens in the intervening Supreme Court cases. I understand your colleagues across the way think that Ludens is no longer good law, but he could have actually easily distinguished Ludens from the intervening Supreme Court cases and followed Ludens. He could have- You're talking about Judge Ranjan? Is that what you're speaking of, Your Honor? Correct. Yeah, I would agree he could have, but of course I'm not Judge Ranjan and I think he expressed his dissatisfaction with the decision of the panel. And I think that if you look at the Post-Cassette's position, they sort of believe- I'm sorry. They sort of argue that somehow Ludens conflicts with Litton and with Nold, with Nold Brothers. Actually, it doesn't. Nold Brothers, if you think about it, I think this court was very insightful in what goes on in the labor management relations with regards to arbitration when they came down with Ludens. And why I say that is under Nold, there was a question of whether or not there was an- whether or not the contract expires, just as it did here. And both Nold and Litton both say in their language that just because the contract expires, that does not necessarily mean that the arbitration provision ceases. So they recognize what Ludens- what you folks said in Ludens, that that is true. It does not expire. And the way they approached it with Nold was on a case-by-case basis, looked at it in Nold. And in Nold, what they did say is because the severance pay vested under the agreement, that's what the people were entitled to, just because the agreement expired did not necessarily mean that that was not an arbitrable grievance and they ordered arbitration. On the other hand, in Litton, the question was more of a seniority issue. And the seniority issue said- and the reunion said, we want to have the people called back or laid off in seniority order. But the seniority provision provided specifically that seniority and other things such as aptitude and ability can- and that fluctuates. So that wasn't vested at the time the contract- it changed as- it could have changed at the end. In other words, someone might have been qualified to do the job when the contract expired. Three weeks later or a year later, when they were- when they were arbitrating about the recalls, that person may not have had that. So that's why they didn't order arbitration. Let me ask you this with regard to an express revocation. Let's assume that Luden's is still controlling here and that nothing that happened in MG Polymers or CNH made Luden's bad law. If we look at this from the point of view that there's an implied, in fact, contract that continues after the expiration of the collective bargaining agreement, unless something is done to expressly rescind that implied, in fact, contract, why wouldn't the November- I think it's November 17 letter be the expressive power law? And let me look at it this way. Not the way the court did in newspaper, the NPO. But the letter said that we're going to continue to comply with the things we legally have to do. But that's no commitment at all because with or without a collective bargaining agreement, they had to continue to do the But then it went on to say, we're going to decide our duty to arbitrate on a case-by-case basis. Since the collective bargaining agreement required arbitration in all disputes, why wouldn't the expression that we're going to arbitrate only at a case-by-case basis as we see fit be an express disavowal of the implied, in fact, obligation to arbitrate? Just as if they'd said, we're not going to arbitrate. I don't see the difference. It's clearly a definite, unmistakable, unambiguous revocation of the duty to arbitrate. I don't think it is. And if you look at the record in the other case, as Judge Schwartz noted, the Post Gazette acknowledged that when you read that writing, her specific question was, do you think that can be applied to any grievance going forward based on what you, the Post Gazette, think you want to arbitrate? And her answer was yes. So that isn't an unequivocal disavowal of arbitration provision. Well, it is. And this adds to the way the arbitration provision is written in the collective bargaining agreement. The collective bargaining agreement says, when there is a dispute that's not resolved, it shall go to arbitration. That's right. That's right. And then management comes and goes, no, we're not going to do that anymore. We're going to only arbitrate cases that we want to arbitrate. Well, then how... That to me, that's an express, I'm sorry, that's an express revocation of the arbitration clause as written in the initial collective bargaining agreement. Not really, because they, up above, if you notice what they did write, they said that we will not honor the contractual issues. What are contractual issues? I guarantee you most people don't know what contractual issues. There's only three contractual issues, really, the board recognizes. One's arbitration, the other is dues checkoff, and the other is union security clause. That's what they're saying. We're not going to honor those. But that changes. For example, two years ago, two of those issues, the dues checkoff, and the board had found was a contractual issue. They found that union security was a contractual thing. That was two years ago. They changed their mind. That vacillates. That's why I think Luden said, in order to clarify, under what was decided in Noll and what was decided in Linton, they wanted to clarify and say it must be a particularized disavowalment of arbitration. And that was not. You know, I was on the panel in Luden's. I was on the panel in Luden's. I hate to admit it because it somewhat designates how old I am, but I think that can be obvious by visual observation also. Nevertheless, I have no, my feelings aren't going to be hurt if Luden's is overruled. I don't think Luden's needs to be overruled. I think Luden's is probably one of the best labor management decisions to come out of this court, frankly, because it makes clear if you want to disavow arbitration, you have to say it. And they did that. If you look at the record, if you look at their letter that they sent to the Teamsters after this all began in January 14th, the record page 200, they specifically say this, they specifically say the Post-Gazette disagrees and that they are specifically disavowing arbitration. That's what we're looking for. That's why Luden says we want a particularized disavowalment. Now, how much more particularized could you be then? At that time, all contractual obligations of the current agreement shall expire and then consistent with Judge McKee's position or suggestion, there's language in it that says we're going to do what we want to do, not what the CBA says we're going to do on arbitration. That's not disavowing arbitration, is it? They're saying we're going to arbitrate and we just don't know what. That's arbitrating the contractual provision to arbitrate and arbitration's totally a creature of contract. Yes, it is. And it's clearly inconsistent with the obligation they had under the CBA to arbitrate everything. Well, keep in mind, as Luden says, you look at the party's actions, there was no provision ever proposed in these negotiations or ever that anyone wanted to do away with the arbitration provision. That's what Luden talks about. What are the parties, not their subjective intent, but their objective intent. We look at what they did. They proceeded, no provisions, no disavowal of arbitration was ever submitted in negotiations. So as Luden says, unless there is a disavowal, we assume that they are going to continue with that agreement. That's not a, that is not necessarily a big burden. It's very simple. You just simply say we're going to arbitrate only those cases that the law requires us to do, period. But they don't say that. That's none. That's none. Well, no, no. What category of case does the law require arbitration in, separate and apart from contractual obligation? What Noll said and what Luden said. The language in Noll and Luden specify. If there was a breach of the agreement, that's- Breach of the agreement. It's still rooted in the contract. Yes, yes. It's an obligation. Yes, but Noll said if the right that someone is complaining about post-contract, after the contract's over, was vested in that individual during the contractual term, they arbitrate it. And that's why Luden's is a very good decision. It says, look, if you're going to just disavow, it's a very simple thing. Just disavow it. We're not going to arbitrate, period, unless we are legally required to do that. And you know what I think most amazing about this? There's four judges that looked at this. If it is so clear and particularized, why do two disagree? If two judges can't find this to be particularized, how does the man on the floor, the union steward, who doesn't know anything, his education is nowhere near what you folks are. And if you were confused, just imagine how they are confused. That's why Luden's is good law, because it wants someone to say specifically, you have to particularly say I'm not going to be arbitrating grievances unless they are demanded by law. And that's what the law should be. It makes sense. What's the matter with saying I'm not going to arbitrate unless I choose to do so? Unless I refuse. That doesn't do any good because the law requires them to arbitrate cases such as we had in old, such as we had in arguments like we're made in Northern Lytton. The letter says that they're going to continue to fulfill their statutory or legal obligation. Had they stopped there, maybe. But even then, that's an ambiguous thing for someone on the floor. But they didn't stop there. They stopped. They went further and said we will arbitrate in a case by case basis. What does that mean? What does that mean to the shop steward? What does that mean to an ordinary union person? That doesn't mean they don't know what that means. And that's not what it means. Do I know what it means? Do they need to know what it means? Absolutely. They're the contracting party. They should know. Absolutely. They don't know who they're supposed to know. I think there are a lot of them need a little education then. Pardon me? I think there are a lot of them who need a little further education. Your Honor, I would have to agree. I've been doing labor business for over half a century. And I can tell you the biggest problem that unions have is the people come off the floor. They have no knowledge and they're put in positions where they're in charge of these kinds of matters. And I think that's what Ludens was trying to address. Frankly, I believe that's exactly right. And that's why it should be particularized. They would understand if it came across and say we are not going to arbitrate any grievance unless the law requires us to. Period. That's the end of it. Instead, they have the wishy-washy language. And that's not what Ludens wants. Thank you. We'll see you on rebuttal. We'll see you on rebuttal. Is it Mr. Hentos? Yes. Good morning. Good morning. Brian Hentos on behalf of the Pittsburgh Post-Gazette. Before I go any further, I want to clear up something that was brought up previously. The Post-Gazette's position is not that Ludens is somehow in conflict with the Nolde decision. Our position is that it's in conflict with Tackett and Reese and other decisions by this court. Because in Tackett and Reese, they stated collective bargaining agreements do not survive contract expiration without the party's express written consent. Ludens, in contrast, says an implied in fact contract will survive unless you clearly disavow. That's our position on that. But, you know, Tackett and Reese, and I think the district court here was kind of leaning toward that position. But Tackett and Reese dealt with obligations in the collective bargaining agreement that required payment of benefits. That's very different than an arbitration situation. I can see a situation where you would not want to burden the employer with continuing to pay benefits after the end of a collective bargaining agreement. The employer may not be in any financial position to do that, which may in fact be why the collective bargaining agreement was allowed to expire. But arbitration is different. That does not require the employer paying out any funds whatsoever out of their treasuries. I'm just not sure that Tackett and Reese have the kind of breath that on their face is described to them. Your Honor, a couple of issues. One, I think Tackett and Reese, they did not limit themselves to the retiree benefits that were at issue in that case. And I'd call your attention to two cases that came out of the Third Circuit, the Knitterhaus case, and more importantly, the Penn-Jersey case. In Penn-Jersey, they noted that Tackett applies regardless of the provision at issue. So I think it's a little broader. However, I don't want to get too bogged down in this today because whether or not the court believes Ludin should be overturned or not, the Post-Gazette still wins. And they still win because of the same reasoning that was done in the PG publishing decision from last year. Why don't you address Judge Schwartz's footnote as well as the district court's reluctance to buy into that logic? A couple of issues there, Your Honor, and I think it would be really helpful for us just to look at the letter. So the letter, the Post-Gazette just didn't write this letter out of the blue. It was designed to address three specific legal issues and it had the direct purpose of satisfying specific labor law requirements. The first part of the paragraph is designed to address any type of contractual terms. It states, the current agreement expires on March 2017. At that time, all contractual obligations of the current CBA shall expire. This statement was included specifically to disavow a Ludin's contract. The problem is, though, and I'll do it to finish your answer. The problem is that they wanted to say that some of the contractual obligations we will continue to abide by, i.e., we'll arbitrate what we want to arbitrate. But that duty of arbitration, as I mentioned to Mr. Parris, that is strictly a contractual obligation. So they're saying that the terms of the contract cease to bind us, but we're going to be bound by some of those divisions. We're just going to pick and choose the cases in which we're going to be bound by those divisions. That's problematic to me. And the Penn Jersey case that you mentioned, again, it's a non-presidential opinion, NPO. So that does not help you in terms of the continued viability of Ludin's. Your Honor, let me address the case-by-case issue. So the language case-by-case, that was designed to establish, to satisfy two statutory requirements that we have. First, Indiana and Michigan Electric, which requires employers to process post-contract expiration grievances up until arbitration. You're not required to arbitrate. Now, Litton says there are some post-contract expiration grievances that must be arbitrated. If you look at the dissent in Litton, they use the exact phrase case-by-case basis in saying, look, under the majority opinion going forward, an employer will need to analyze post-contract grievances on a case-by-case basis. The Post-Gazette takes that directly from Litton to establish, look, we're going to comply with Litton. We're going to take the exact words they used. And in addition, I believe the court kind of hit on it. Well, I don't want to interrupt you, but I feel obligated to lose my train of thought at that point in my life. That would be fine if the first phrase wasn't there saying we're going to continue to abide by those contractual obligations that we're legally obligated to abide by, which to me is like saying it's a windy day when the wind blows. They have to abide by those provisions anyhow, so I don't know why they're saying that we're going to go ahead and comply with them. But they did say that. So to me, that really undercuts your argument, because if they had to abide by the certain arbitrational obligations because of Supreme Court law, like Litton saying you've got to arbitrate these, that's covered when they say we're going to continue to do what the law requires. They then go further and say, but as to contractual obligations, we'll do that when we pick and choose and think we should. Your Honor, I'd submit that it was included in there to tell them, look, we're going to comply with Litton and Indiana and Michigan Electric. However, the key issue also with that statement when it says, look, the Post-Gazette will determine its obligation to arbitrate, that's taking something that was mandatory during the term of the contract and saying, look, going forward, it's going to be voluntary. The Post-Gazette will decide its obligation to arbitrate cases in the future. Now, that in of itself, the prior panel decision in PG Publishing, they noted with respect to that, that this standing alone was enough to demonstrate, look, the contract as it had existed before, it's over. It's not going forward that way. The Post-Gazette is taking over and making the unilateral or voluntary decision as to whether or not something would be arbitrated. Earlier, the panel had asked what I thought of or my interpretation with respect to Judge Ranjan's footnote and a couple issues I think there. First, as I just mentioned, the key and mentioned by the earlier panel, we took something that was mandatory and we made it voluntary. Second, the court had mentioned, look, you could have said it in a clearer way. You could have said we're only going to arbitrate those things arising under the expired agreement. That does not actually comply with Indiana and Michigan, and it probably doesn't comply with Lytton either. Both of those cases say, look, post-contract, you've got to take a look, analyze the grievance, determine whether or not somehow it does fall under Lytton. By saying, look, we're only going to do what the law requires, it gets awfully close to a wholesale disavowal, which would run directly afoul of Indiana and Michigan Electric. What do you make of Mr. Pass's argument, his last argument, that it's anything but a clear revocation and that two of the four judges that have looked at this came to different conclusions? Respectfully, I would disagree. I think if you go back, really, this case, we win under Luden's with the first paragraph of the letter where it says the current agreement expires on March 31, 2017. At that time, all contractual obligations of the CBA shall expire. There's only one way to read that, Judge, and that's exactly what the panel said. Look, it is clear based on that language that the contract is done. You really need not get any further than that. Why did the letter include the second paragraph? That's to address, so really what the letter does is first we extinguish the contractual obligations. Contract's gone. Contract's done. Then we want to address our statutory obligations. Going forward, we will do what we're required to do, maintain the status quo ante. That's what the first paragraph says. Do you really need to say that? I believe you have to, Your Honor. This is somewhat of an unusual issue. I think there's a very good example in the record. If you look at the letter that was sent to the Preston Union when they demanded arbitration, it goes through what a Litten analysis is. I think in a lot of ways some of these concepts are somewhat foreign to folks, but at the conclusion of a labor contract, the employer has duties. Their duties are maintain the status quo ante and then, as I said, process some grievances. You don't have to arbitrate them unless it falls under Litten. If you take a look at the letter and the record, it kind of lays all that stuff out for you. But I think the language needed to be in there to demonstrate to the union, we understand what our statutory duties are, we're going to comply with them. And that's why it was included. But they would have had to comply with them whether they put that in or not. You're correct on that, Judge, yes. It was simply a notification to them that we're aware of our duties and we're going to comply with them. I have nothing further. I have nothing further. Before I forget, though, could we at the end of this order a transcript? We'll do that. Judge Roth, any other questions? Thank you very much. Your Honor, I think we have to look at what the language allusions is. My opponent here emphasized that the contract was that they gave the notice that the contract was terminated. Here's what Linton said. An arbitration clause may survive at the expiration of a termination of the CBA impact insofar as a term of the new implied CBA, unless one, both parties in fact intend the term not to survive. Two, under the totality of the circumstances, either party will objectively and the last CBA objectively manifest to the other a particularized intent, be it expressed verbally or non-verbally, to disavow and repudiate the arbitration. This result injects more stability and certainty in the labor law and promotes the primary statutory objectives of peaceful and stable labor relations underpinning the LMRA at a slight cost of a notice requirement forcing a party to make clear its wish to no longer abide by the arbitration clause. This court opined specifically in circumstances like in Luton where neither party in any palpable way challenged the continued vitality of the arbitration provision, in particular as opposed to the CBA as a whole, before the dispute erupted and where no evidence showed that both parties in fact intended their obligation to arbitrate grievances be discharged, we think the party's duty to arbitrate grievances according to the terms of the CBA was never totally discharged. In other words, Luton's general undifferentiated termination of the CBA effective July 1990, I'm sorry, 1992, merely transmuted the party's duty to arbitrate into the term of an implied CBA. So the fact that they canceled the contract does not necessarily mean they're going to cancel the arbitration. And that is consistent with both Noll as well as Luton. Aren't they saying they're going to cancel the arbitration as it existed in the contract? That's what they're saying here. Yeah. Isn't that a de facto termination of the arbitration? I mean, in that last sentence, with respect to arbitration, the company will decide its obligations to arbitrate grievances on a case-by-case basis. That's a repudiation of the contract because that's not what the contract says. Well, it's a repudiation of the contract, but that's not enough. That's what Luton says. It has to be a particular opposition that says the vitality of the arbitration provision in particular as opposed to the CBA as a whole. In other words, you can oppose the CBA as a whole, but you have not necessarily said you will not arbitrate grievances. That's what Luton says because of the favored place that arbitration has in our judicial system with regards to labor management disputes. I also would point out, if you look at the record, and if you look at the record on page 50, they did give, when they dealt with the pressman, they said specifically, and this is in January of 2019, with the pressman only, an arbitration clause does not generally continue in effect after the collective bargaining agreement expires. Moreover, the company has disavowed any obligation to arbitrate post-expiration grievances. That's what they're telling the pressman. No other letter with regard to the mailers or the typos similarly says that. None. Thank you, counsel. Thank you very much. Thanks to all counsel. We will take this case.